## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

CURTIS PACE, ET AL.                                                    CIVIL ACTION

VERSUS                                                                      No. 11-387

STATE FARM FIRE AND CASUALTY                                  SECTION I
COMPANY, ET AL.

### ORDER AND REASONS

Before the Court are motions[1] for summary judgment filed by defendants, State Farm

Fire and Casualty Company ("State Farm"), John E. McAuliffe, Jr. ("McAuliffe"), State Farm

Mutual Automobile Insurance Company, Kevin A. Schnyder ("Schnyder"), and Schnyder's Fleet

Repair, LLC ("Fleet Repair").  Plaintiffs, Curtis Pace ("Pace") and Dorothy Pace, oppose[2] the

motions.  For the following reasons, the motions for summary judgment are **GRANTED IN**

**PART** and **DENIED IN PART**.

### *BACKGROUND*

On January 16, 2009, Schnyder and Pace were involved in a three-car accident as

Schnyder was transporting a rig (an 18-wheel tractor without a trailer) to his decal facility and

repair shop in the course and scope of his duties with Fleet Repair.[3]  Pace suffered injuries and

he and his wife, Dorothy, brought a personal injury lawsuit (the "original lawsuit") against

Schnyder and Fleet Repair as well as State Farm, their insurer.[4]  Pace and his wife reached a

---

[1] R. Doc. No. 14, 15.
[2] R. Doc. No. 40.
[3] R. Doc. No. 40, p.2.
[4] R. Doc. No. 1, p.3.

1

settlement agreement with Schnyder, Fleet Repair and State Farm.[5]  At the time of the agreement, all parties believed that the only insurance which afforded coverage to Schnyder and Fleet Repair for the accident was a $300,000 single limits policy that went into effect one day before the accident.[6]

In the present lawsuit asserting fraud, plaintiffs claim that there was, in fact, an additional policy of $1 million that afforded coverage to Schnyder and Fleet Repair for the accident.[7] Plaintiffs allege that Schnyder, Fleet Repair, and State Farm, through their attorney, McAuliffe, intentionally misrepresented to plaintiffs the amount of available insurance for the accident.[8] Plaintiffs further allege that State Farm modified and created documents to make it appear that the $300,000 policy was amended and increased to $1 million after the accident occurred when, in truth, there was applicable coverage of $1.3 million.[9]  Based on these misrepresentations, plaintiffs claim that they were fraudulently induced into settling their claims for a fraction of the value of what they now believe their claim is worth.[10]

Defendants move for summary judgment on the ground that no misrepresentations were made because the $1 million of coverage was not applicable at the time of the accident. Defendants also claim that as part of the settlement agreement in the original lawsuit, plaintiffs agreed to provide financial indemnification to State Farm.  Accordingly, defendants seek an award of attorneys' fees and costs for its defense of plaintiffs' claims following the execution of the settlement agreement.

---

[5] *Id.* at p.4.
[6] *Id.*
[7] *Id.* at p.5.
[8] *Id.*
[9] R. Doc. No. 40, p.14.
[10] R. Doc. No. 1, pp.5-6.

*LAW*

## I.      SUMMARY JUDGMENT

Summary judgment is proper when, after reviewing "the pleadings, the discovery and disclosure materials on file, and any affidavits," the court determines there is no genuine issue of material fact. Fed. R. Civ. P. 56(c).  The party seeking summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The party seeking summary judgment need not produce evidence negating the existence of material fact, but need only point out the absence of evidence supporting the other party's case.  *Celotex*, 477 U.S. at 323; *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1195 (5th Cir. 1986).

Once the party seeking summary judgment carries its burden pursuant to Rule 56(c), the other party must come forward with specific facts showing that there is a genuine issue of material fact for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  The showing of a genuine issue is not satisfied by creating "'some metaphysical doubt as to the material facts,' by 'conclusory allegations,' 'unsubstantiated assertions,' or by only a 'scintilla' of evidence."  *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citations omitted).  Instead, a genuine issue of material fact exists when the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The party responding to the motion for summary judgment may not rest upon the pleadings, but must identify specific facts that establish a genuine issue. *Id.*  The nonmoving party's evidence, however, "is to be believed, and all justifiable inferences are to be

drawn in [the nonmoving party's] favor." *Id.* at 255; *see Hunt v. Cromartie*, 526 U.S. 541, 552 (1999).

## II.   INSURANCE POLICY

"An insurance policy is a contract between the parties and should be construed by using the general rules of interpretation of contracts set forth in the Louisiana Civil Code." *Cadwallader v. Allstate Ins. Co.*, 848 So.2d 577, 580 (La. 2003); *see also id.* ("The judiciary's role in interpreting insurance contracts is to ascertain the common intent of the parties to the contract.") (citing La. Civ. Code art. 2045).[11] "Under Louisiana law, the interpretation of an unambiguous contract is an issue of law for the court." *Amoco Prod. Co. v. Tx. Meridian Res. Exploration Inc.*, 180 F.3d 664, 668 (5th Cir. 1999).  "When the words of the contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent." La. Civ. Code art. 2046.  "A contract provision is not ambiguous where only one of two competing interpretations is reasonable or merely because one party can create a dispute in hindsight." *Amoco Prod.*, 180 F.3d at 668-69 (quoting *Tx. Eastern Transmission Corp. v. Amerada Hess Corp.*, 145 F.3d 737, 741 (5th Cir. 1998)) (internal quotation marks omitted). "In the context of contract interpretation, only when there is a choice of reasonable interpretations of the contract is there a material fact issue concerning the parties' intent that would preclude summary judgment." *Id.* at 669.

Pursuant to Louisiana law, "[w]ords and phrases used in an insurance policy are to be construed using their plain, ordinary and generally prevailing meaning, unless the words have acquired a technical meaning." *Cadwallader*, 848 So.2d 577, 580 (La. 2003).  A court should

---

[11] The parties do not dispute that Louisiana law applies to the insurance policy at issue in this case.

not, however, interpret an insurance contract "in an unreasonable or strained manner under the guise of contractual interpretation to enlarge or to restrict its provisions beyond what is reasonably contemplated by unambiguous terms or achieve an absurd conclusion." *Id.* "If the policy wording at issue is clear and unambiguously expresses the parties' intent, the insurance contract must be enforced as written." *Id.*

If there is any doubt or ambiguity as to a provision in an insurance contract, Louisiana law applies a rule of "strict construction" that requires that any doubt or ambiguity in an insurance contract be construed in favor of coverage to the insured and against the insurer who issued the policy. *Louisiana Ins. Guar. Ass'n v. Interstate Fire & Cas. Co.*, 630 So.2d 759, 764 (La. 1994); *see also* La. Civ. Code art. 2056 ("In case of doubt that cannot be otherwise resolved, a provision in a contract must be interpreted against the party who furnished its text."); accord *Valentine v. Bonneville Ins. Co.*, 691 So.2d 665, 668 (La.1997); *Crabtree v. State Farm Ins. Co.*, 632 So.2d 736, 741 (La.1994). If an ambiguity exists, a court should "construe the policy 'to fulfill the reasonable expectations of the parties in the light of the customs and usages of the industry.' " *Louisiana Ins. Guar. Ass'n*, 630 So.2d at 764 (quoting *Trinity Indus., Inc. v. Ins. Co. of N. America*, 916 F.2d 267, 269 (5th Cir. 1990)); *see Breland v. Schilling*, 550 So.2d 609, 610-11 (La. 1989) ("Ambiguity will also be resolved by ascertaining how a reasonable insurance policy purchaser would construe the clause at the time the insurance contract was entered.").

## *ANALYSIS*

The issue currently before the Court is whether or not there was only one applicable insurance policy on January 16, 2009—the one providing $300,000 of coverage. If there was, in fact, only one applicable insurance policy at the time of the accident providing $300,000 of

coverage, plaintiffs' claim of fraud would fail as that was the representation made to plaintiffs in the original lawsuit.

The policy documents are unambiguous.  They evidence that on January 15, 2009, State Farm issued a business policy, numbered 98-BD-B734-8, to Kevin J. Schnyder providing $300,000 of business liability coverage.[12]  The effective date of the policy was January 15, 2009 and the policy period was 12 months.[13]  On May 29, 2009, a policy bearing the exact same policy number and effective date was amended to increase the amount of business liability coverage to $1 million.[14]  In addition, the name of the insured was changed to Fleet Repair and the policy premium was increased by $101.28.[15]

Defendants have also submitted affidavits from Richard Williams, a records representative from State Farm, and Schnyder attesting that on January 16, 2009, there was only one policy which provided any coverage to Fleet Repair: policy No. 98-BD-B734-8 that provided $300,000 of coverage.[16]  Williams and Schnyder further attest that it was not until May 2009 that Schnyder contacted his insurance agent to have the liability coverage limit increased to $1 million and to have the name of the insured party changed from Schnyder to Fleet Repair.[17]

As stated, plaintiffs contend that in addition to the policy providing $300,000 of coverage on January 16, 2009, there was an additional policy in place that provided another $1 million in coverage.  In support of their contention, plaintiffs only offer the responses of Schnyder and

---

[12] R. Doc. No. 40-1, p.10.  Plaintiffs object to the authenticity of the declarations pages submitted by the defendants, R.Doc. No. 40, pp.16-17, so the Court cites to the identical exhibits attached to and relied upon in plaintiffs' opposition.
[13] R. Doc. No. 40-1, p.10.
[14] *Id.* at p.23.
[15] *Id.*  Plaintiffs argue that $101.28 is too small of premium to justify an increase of coverage from $300,000 to $1 million, but the declarations clearly state that the amount represents the "Endorsement Premium Increase." *Id.*
[16] R. Doc. No. 14-4, p.1; R. Doc. No. 14-7.
[17] *Id.*

Fleet Repair to plaintiffs' request for admissions in the original lawsuit.[18]  In the responses, Frank Ippolito ("Ippolito"), attorney for Schnyder and Fleet Repair, admitted that prior to the accident at issue, Schnyder and/or Fleet Repair had purchased a policy with $1 million of coverage and that policy was in force and effect at the time of the accident.[19]

Defendants offer an affidavit from Ippolito attesting that he did not consult with his clients before preparing the responses and that the responses were based on his own erroneous interpretation of the policy documents.[20]  Ippolito further attests that after reviewing additional documentation and conferring with Schnyder, his prior admissions were in error and should be withdrawn.[21]

Plaintiffs offer no evidence to rebut Ippolito's explanation of the apparent mistakes that were made in preparation of the admissions.  Plaintiffs insinuate that under pressure from defendants, Ippolito altered his position to provide this explanation, but plaintiffs offer no evidence in support of this allegation.

Plaintiffs also argue that the certificate of Greg Manley ("Manley") proves that there was a second policy with coverage of $1 million at the time of the accident.[22]  On the certificate, Manley states that the declaration page setting forth $300,000 of coverage "represents a true copy of the policy provisions and coverages as of JAN 16 2009 for policy 98-BD-B734-8 issued to Schnyder's Fleet Repair LLC…"[23]  Plaintiffs' argument that the certificate refers to a policy

---

[18] R. Doc. No. 40-1, p.14.
[19] *Id.*
[20] R. Doc. No. 14-13.
[21] *Id.*
[22] R. Doc. No. 40, p.22.
[23] R. Doc. No. 14-4, p.7.

other than the business policy originally issued to Schnyder and later amended to insure Fleet

Repair is a nonstarter as the certificate clearly refers to the policy numbered 98-BD-B734-8.

The only other argument plaintiffs offer in support of their contention that an additional

policy exists is grounded in their own speculation.  Plaintiffs point out that since Schnyder

operated two separate entities, Schnyder Decal Garage and Fleet Repair, a second, separate

policy of $1 million must exist.  Notwithstanding that plaintiffs have provided no evidence in

support of their speculation, the existence of a separate policy is belied by the fact that the

$300,000 policy and the $1 million policy bear the exact same policy number.  Accordingly, the

Court finds that no genuine issue of material fact remains with respect to whether a second,

separate policy existed at the time of the accident.

Plaintiffs further contend that at some point following the accident, the defendants

doctored the policy documents of the "second" policy in order to render the coverage

inapplicable to the accident.  Plaintiffs allege the doctoring occurred when one of the defendants

typed the words "Amended May 29, 2009" and "Section II coverage limits changed" on the

declarations page of the policy.  Even if the Court were to apply plaintiffs' doctoring allegations

to policy No. 98-BD-B734-8, plaintiffs still offer absolutely no evidence in support of their

contention.[24]  Accordingly, the Court finds that plaintiffs have failed to establish that a genuine

issue of material fact remains with respect to such claim.

---

[24] Instead, plaintiffs only offer the argument that such attempts to doctor the policy documents would not be a legally effective method of amending the policy and would constitute a violation of La. R.S. 22:1262. R. Doc. No. 40, pp. 12-16.  Since such arguments are necessarily contingent on the Court's finding that the policy documents were doctored in the first place, the Court does not address such arguments.

Plaintiffs' remaining substantive argument[25] is that, "[b]y failing to identify the $1 million dollar [sic] and the $10,000 policy[26] that were in effect on the date of the Pace/Schnyder accident, defendants have misrepresented the applicable policy limits in violation of La. R.S. 22:658."  Since plaintiffs have failed to offer any evidence showing that the increased liability limit was in effect on the date of the accident or that the $10,000 policy was applicable to the accident, the Court concludes that no genuine issues of material fact remain with respect to whether the policy providing $300,000 of coverage was the only applicable policy in place at the time of the accident.

Defendants claim that the Court should award attorneys' fees and costs to them because plaintiffs are contractually bound to pay such fees and costs relative to this litigation.  In support of such argument, defendants have submitted an unauthenticated document that plaintiffs appear to have signed.[27]

First, based on the record currently before the Court and the applicable jurisprudence, the Court exercises its discretion not to award attorneys' fees and costs to defendants.  Second, given the scant briefing and documentary evidence presented by defendants relative to plaintiffs' alleged contractual duty to pay defendants' attorneys' fees and costs, the Court cannot conclude that plaintiff has such a duty.[28]  The Court declines to award attorneys' fees and costs to defendants.

---

[25] Plaintiffs raise several objections with respect to the admissibility of certain exhibits attached to defendants' motion, including insurance binder documents, the policy application and e-mail correspondence. R. Doc. No. 40, pp.17, 20.  Since the Court does not rely on the referenced exhibits, the Court does not address these objections.

[26] At the time of the accident, Schnyder had another policy issued by State Farm Mutual Automobile Insurance Company that provided $10,000 of coverage for Schnyder's use of a 2003 Chevrolet Astro, which was not involved in the accident at issue. R. Doc. No. 40-1, p.21.

[27] R. Doc. No. 14-8.

[28] The Court makes no finding with respect to whether plaintiffs' alleged contractual duty to pay attorneys' fees and costs does or does not exist.

9

For the foregoing reasons,

**IT IS ORDERED** that defendants' motions for summary judgment are **GRANTED IN PART** in that plaintiffs' complaint is **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that defendants' motions for summary judgment are **DENIED IN PART** in that the Court declines to award attorney's fees and costs to defendants.

New Orleans, Louisiana, June 10, 2011.

**LANCE M. AFRICK**
**UNITED STATES DISTRICT JUDGE**